IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Plaintiff, )<br>                              )<br>v.                                   )<br>                              )<br>HECTOR CHACON, )<br>    Defendant. ) | No. 21 CR 636<br>Honorable Sara L. Ellis |

**DEFENDANT HECTOR CHACON'S**
**SUPPLEMENTAL MOTIONS *IN LIMINE***

NOW COMES the Defendant, HECTOR CHACON by and through his attorneys, BLAIRE C. DALTON and QUINN A. MICHAELIS, and respectfully moves this Honorable Court to grant the following supplemental motions *in limine*[1]. In support, Mr. Chacon states as following:

**A. Motion To Limit Certain Testimony from Government's Expert Witness**

The government provided defense counsel with an expert disclosure on March 18, 2025. In that disclosure, the government summarized that, among other things, Special Agent Paul Daou would testify as an expert about text messages[2] sent and received by the defendant, and the interpretation of certain slang terms including:

| Code | Translation |
|---|---|
| WTW | What's the word/ What's Up? |
| LMK | Let Me know |
| OMW | On my way |

---

[1] The Court previously granted Mr. Chacon leave to file additional motions *in limine* before trial. See Dkt. 400, p. 4.
[2] The government has not yet identified the specific messages it intends to introduce at trial.

| Bet | Cool/Ok |
|---|---|
| Mf | Motherfucker |
| Send me a snap | Send me a picture |
| Bread | Money |
| RN | Right now |
| WYO | What you on/What are you to? |

Preliminarily, Fed. R. Evid. 702 requires an expert be qualified by "knowledge, skill, experience, training, or education" to render an opinion, and that the opinion "assist the trier of fact to understand the evidence or to determine a fact in issue." This circuit allows expert law enforcement witnesses to translate coded language that may seem entirely innocuous to an untrained jury. *United States v. Rollins*, 862 F.2d 1282, 1292 (7th Cir. 1988), *Untied States v. York*, 572 F.3d 415, 423 (7th Cir. 2009). Importantly however, "an expert may not provide interpretation on an ambiguous or obscure word or phrase that is not based upon the witness's expertise. Such interpretations would 'merely put an expert gloss on a conclusion that the jurors should draw themselves.'" *United States v. Gan*, 54 F.4th 467 (7th Cir. 2022), quoting *United States v. Christian,* 673 F.3d 702, 710 (7th Cir. 2012). The Seventh Circuit has cautioned against conflating commonly used slang or vernacular with the code words of a criminal milieu. *United States v. Jett*, 908 F.3d 252, 266 (7th Cir. 2018). Case Agents may not give interpretation to terms with which they are no more familiar than others. *Id.* Those terms are properly left for the jury to evaluate on its own. *Id.*, See also *United States v. York*, 572 F.3d 415, 423 (7th Cir. 2009); *United States v. de Soto*, 885 F.2d 354, 361 (7th Cir. 1989).

Rule 702 and *Daubert* call upon a district judge to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue." *Jett*, 908 F.3d 252, 265–66 (7th Cir. 2018), quoting *United States v. Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786. Mr. Chacon requests that the Court do so here.

The selected phrases the government intends to have Agent Daou interpret are not code words that have fixed meaning within the firearms trafficking realm, or within this particular "pseudo conspiracy", they are common shorthand phrases used for texting, whether the sender is discussing firearms or planning a night to the movies with friends. Mr. Chacon anticipates that Agent Daou will testify that, in his experience, illegal firearms traffickers use code words to disguise the true nature of their conversations when they set up deals. Allowing Agent Daou to interpret the phrases delineated above, that are outside of his expertise in firearms and firearms trafficking, would cloak these common phrases in criminality such that the jury may improperly conclude that the use of these terms are themselves "code" for criminal activity whenever they appear in the text messages.

Further, interpretation of these code words would not assist the jury to determine a fact at issue. *United States v. Rollins*, 862 F.2d 1282, 1292 (7th Cir. 1988). In *United States v. Ceballos*, 302 F. 3d 679 (7th Cir. 2002), an agent interpreted simple pronouns as referring to methamphetamine shipments. The agent's interpretation was upheld because the use of those pronouns was ambiguous

and the agent's experience in interpreting drug code would assist the jury. Similarly, in *United States v. York*, 572 F.3d 415, (7th Cir. 2009), the Seventh Circuit upheld the admission of an agent's interpretation of numbers within conversations to assist the jury with the coded meaning of those numbers. Here, the government's proffered expert testimony provides no such link to illegal activity. Agent Daou's testimony "interpreting" these common phrases would simply be "put[ting] an expert gloss on a conclusion that the jurors should draw themselves." *Christian,* 673 F.3d at 710.

### B. Motion *in Limine* to Bar the Government from Introducing Voluminous Evidence Produced on Eve of Trial

Mr. Chacon respectfully requests that this Court bar the government from admitting, referencing, or relying on evidence it belatedly produced on the afternoon of October 7, 2025, just 13 days before trial.

The government filed its case against Mr. Chacon on May 16, 2022. Dkt. No. 60. The case was previously set for trial on three separate occasions. *See* Dkt. Nos. 228, 288, 318. The October 20, 2025 trial date was set on May 13, 2025. Despite this case being over three years old, the government's October 7, 2025 production contained 158 files, making up 4.6 GB of data, that the defense had never seen before[3]. The untimely production includes cell phone extraction reports from at least three different phones, hours of video surveillance and recorded calls, and witness

---

[3] Out of an abundance of caution, and to avoid revealing evidence in a public filing, defense counsel will ensure that the Court has a copy of the government's index from its October 7, 2025 production at the pre-trial conference.

4

interviews dating back to 2021. It is common practice in this district to produce cell phone extractions during the discovery phase of a case, not in the weeks leading up to trial. And for good reasons: it is an extremely time-consuming and massive undertaking to review one cell phone extraction – let alone three or four.

Notably, Rodolfo Ortega's cell phone extraction remains outstanding. Mr. Chacon first learned of Ortega's phone extraction on the afternoon of October 6, 2025, when the government identified a list of text messages it intends to introduce as evidence at trial (despite the Court's March 18, 2025, order requiring the government to produce such a list in an expedited fashion). The next morning, when Mr. Chacon inquired about Ortega's phone, the government indicated it would produce it the same day. The defense is still waiting. As the Court is well aware, cell phone extractions, in and of themselves, are extraordinarily voluminous. They typically contain vast amounts of relevant and material evidence, whether that be inculpatory or exculpatory. Producing cell phone extractions at this juncture is untimely. Moreover, permitting the government to rely on any evidence recovered from these last-minute productions of cell phone extractions would unduly prejudice Mr. Chacon, as his trial team will not be able to devote the necessary time and resources to comb through each extraction in the twelve days left before trial.

For more than 60 years, the law has been that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 88

(1963). The Seventh Circuit requires disclosure to be made "before it is too late for the defendants to make use of any benefits of [the] evidence." *United States v. Stott*, 245 F.3d 890, 901 (7th Cir., 2001). To establish a *Brady* due process violation, a defendant must demonstrate that the government suppressed evidence, the evidence was either exculpatory or impeaching, and that prejudice resulted. *United States v. Mitrovich*, 95 4th 1064, 1071, (7th Cir., 2024). The government's late disclosure yesterday of 4.6 GB of data has prejudiced Chacon and necessarily prevents his counsel from making use of any benefits of the evidence. The sheer volume of information contained in the government's belated disclosure - and disclosure of Ortega's phone that remains to be produced - makes it impossible for Chacon's counsel to review all of the information and determine its usefulness before the trial starts on October 20, 2025.

    This issue is compounded by the government's belated disclosure of six other phone extractions in March 2025. It is common practice for the government to produce all phone extractions in discovery. However, prior to the parties' original pre-trial conference in March, the government had not produced *any* phone extractions. Shortly after, Chacon received extractions from (1) Chacon's phone, (2) Mancera's iPhone 8 conducted by Orland Park, (3) Mancera's iPhone 8 conducted by Chicago, (4) Mancera's iPhone 12, (5) Mancera's Samsung, and (6) Bonds's phone.

    As an example of the extraordinary amount of information contained in these phone extractions, just the "chats," or text messages and social media messages, from Chacon's phone makes up 38,396 pages of information while one of Mancera's

phones makes up 40,362 pages of information. This does not include call records or other information. Because the government's late disclosure has prejudiced Chacon's ability to effectively make use of the evidence, the government should be barred from relying on or introducing any of the 4.6 GB of information it produced yesterday.

Chacon has been prejudiced as a result of this late disclosure and the government should be barred from making any use of any of the 4.6 GB of information it produced on the afternoon of October 7, 2025, as well as the yet to be produced extraction of Ortega's phone.

### C. Motion *in Limine* to Exclude Evidence of Drug Trafficking

Mr. Chacon's response to the government's motion *in limine* to introduce evidence of Mr. Chacon's personal drug use touches on the defendant's position that this evidence should be excluded. As such, Mr. Chacon incorporates that argument herein. The government, however, appears to be requesting permission to introduce evidence that co-defendants Boykin, Bonds, Mancera, and Ortega engaged in drug trafficking against Mr. Chacon, despite the fact that he is not charged with such a crime and there is absolutely no evidence that he engaged in a conspiracy to commit drug trafficking.

Shortly before this case was set for trial in March of 2025, the government disclosed that it may call ATF Expert Andrew Karceski to testify. The government summarized that Agent Karceski would testify about "drug and firearm trafficking" amongst other things. Mr. Chacon filed a motion *in limine*, pursuant to Fed. R.

7

Evid. 402, 403, to preclude the opinion testimony about drug trafficking as it was irrelevant, unfairly prejudicial, confused the issues, and would mislead the jury. See Dkt. No. 383, pp. 1-2. In response, the government insisted that it did not intend to introduce evidence about drug trafficking through its expert. See Dkt. No. 395, p. 1. The Court subsequently ordered the government to abide by the representation and that if the government were to elicit any testimony from the ATF Expert about drug trafficking, Mr. Chacon was free to raise an objection. See Dkt. No. 400, p. 3.

Based upon the government's representations in its motion *in limine*, as well as the evidence contained in the recently disclosed discovery, it is now apparent that the government hopes to make this case about drug trafficking – an uncharged offense. By way of example, the government's supplemental motion *in limine* indicates the desire to introduce evidence that Mr. Chacon "knew that Mancera was a drug dealer". Dkt. No. 447, pp. 20, 22. The government's updated witness list summarizes certain witness testimony including: testimony about items recovered from Mancera's stash house and storage locker, testimony about Mr. Bonds dealings with Mancera and Boykin and Mr. Boykin's dealings with Mancera – both of which involve trading firearms for narcotics. Finally, the untimely produced discovery batch includes evidence of various DEA Lab reports and Reports of Interviews that contain statements regarding Mancera's drug trafficking business. While the government has yet to produce a list of exhibits with corresponding bates stamps that Mr. Chacon can refer to specify his objections, it remains clear that the government's trial strategy has shifted into irrelevant and prejudicial territory.

To the extent that the government seeks to introduce any evidence regarding drug trafficking, Mr. Chacon vehemently objects and respectfully requests that the Court preclude the government from doing so under Fed. R. Evid. 402 and 403.

**CONCLUSION**

WHEREFORE, Mr. Chacon respectfully requests that this Court grant his supplemental motions *in limine*.

Respectfully submitted,

/s      *Blaire C. Dalton*

/s      *Quinn Michaelis*

Blaire C. Dalton
DALTON LAW, LLC
53 W. Jackson Blvd., Suite 1523
Chicago, IL 60604
(847) 373-4750

Quinn A. Michaelis
Attorney At Law
73 West Monroe Street, Suite 106
Chicago, IL 60603

9

## **CERTIFICATE OF SERVICE**

I, Blaire C. Dalton, an attorney for Defendant Hector Chacon, hereby certifies that on this, the 8th day of October 2025, I filed the above-described document on the CM-ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

Respectfully submitted,

/s      *Blaire C. Dalton*